IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DIANE SEIFERT<br>20300 North Park Manor, Apt. 2<br>Shaker Heights, Ohio 44118,<br><br>*Plaintiff*,<br><br>v.<br><br>EAT 'N PARK HOSPITALITY<br>GROUP, INC.<br>c/o CORPORATE SERVICES<br>COMPANY<br>1160 Dublin Road, Suite 400<br>Columbus, Ohio 43215<br><br>And<br><br>PARKHURST DINING, LLC<br>285 East Waterfront Drive<br>Homestead, Pennsylvania 15120,<br><br>*Defendants*. | CASE NO.<br><br>JUDGE<br><br>**COMPLAINT**<br><br>**(Jury Demand Endorsed Hereon)** |

Ms. Diane Seifert ("Plaintiff" or "Seifert') by and through her undersigned counsel, and for her Complaint and claims against Eat 'N Park Hospitality Group, Inc. ("Eat 'N Park" or "Defendants") and Parkhurst Dining, LLC ("Parkhurst" or "Defendants") avers and states as follows.

## INTRODUCTION

1. This dispute is a federal and state employment discrimination lawsuit brought by Plaintiff who worked for Defendants and as an employee at the John Carroll University cafeteria for in excess of thirty-nine years. During her thirty-nine years of employment, Plaintiff, prior to her summary suspension by Defendant on September 19, 2024, was not subject to *any* discipline

of *any* nature, or even allegation of misconduct of *any* nature. Defendants, at all times material herein, knew that Plaintiff was developmentally challenged, cognitively impaired and disabled, and also knew that Plaintiff had on-file with Defendants the name and contact information for a non-disabled relative in the event of serious and non-serious employment-related matters that were of a non-routine nature so that such communications could and would be effectively and properly explained and communicated to Plaintiff.

2. On September 19, 2024, without warning, Defendants suspended Plaintiff's employment, alleging that on one undated occasion Plaintiff allegedly had uttered the word "nigger" in the presence of one of Plaintiff's undisclosed co-workers. Defendants' suspension of Plaintiff was announced and carried out by Defendants' agents, supervisors and managers without contacting or attempting to contact Plaintiff's known and disclosed representatives, and known and disclosed designated person to receive non-routine communications about issues concerning Plaintiff's employment with Defendants. Plaintiff's suspension from employment was also undertaken by Defendants without a *bona fide* investigation, and by using Plaintiff's developmental disability and cognitive impairment against her for purposes of eliciting and attempting to elicit inaccurate and untrue facts and evidence against Plaintiff.

3. On September 26, 2019, Defendants terminated Plaintiff's employment.

## THE PARTIES AND PLAYERS

4. Plaintiff restates and reavers the facts and statements set forth in paragraphs 1 through 3 of this, her Complaint.

5. Eat 'N Park is a Delaware corporation having its principal place of business in the Commonwealth of Pennsylvania. Eat 'N Park, at all material times herein (i.e. throughout Plaintiff's employment), had in excess of one hundred full-time employees in its employment.

6. Parkhurst is a limited liability entity having its headquarters in the Commonwealth of Pennsylvania. Parkhurst, at all material times herein, had in excess of one hundred full-time employees in its employment.

7. At all material times herein, Mr. Jason Brust ("Brust") was an agent, supervisor and manager of Defendants. Brust is a non-disabled, white, Caucasian male.

8. Plaintiff is a disabled, white, Caucasian female. Plaintiff is developmentally challenged and cognitively impaired. Plaintiff has the cognition of a 10-year-old, even though she is 60 years of age. Plaintiff's developmental disability and cognitive impairment substantially limits her major life activities of caring for herself, learning, reading, concentrating, thinking, and communicating. Plaintiff acquired a residence within walking distance of her work at the John Carroll cafeteria because her developmental disability and cognitive impairment precludes Plaintiff from driving on the public roadways.

9. Ms. Debra Cirillo ("Cirillo") is Plaintiff's sister, and her name, address, cellular telephone number, and email were disclosed, and maintained on-file with Defendants throughout Plaintiff's employment. On several occasions prior to September 19, 2024, Brust and Defendants' agents, supervisors and managers contacted Cirillo when communicating non-routine matters and issues concerning Plaintiff and her employment with Defendants.

10. At all material times herein, the overwhelming number of non-management, non-supervisory employees working at the John Carroll University cafeteria, and employed by Defendants were non-disabled, non-white, non-Caucasian.

**JURISDICTION**

11. Plaintiff restates and reavers the facts and allegations contained in paragraphs 1 through 10 of this, her Complaint.

12. This Court has subject-matter jurisdiction over the Complaint under 28 U.S.C. § 1331 because the federal claims arise under the Constitution and laws of the United States, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* Additionally, the Court possesses supplemental jurisdiction over the state-law claims asserted in Plaintiff's Complaint.

13. On March 13, 2025, Plaintiff filed a timely disabilities, race, and color discrimination charge against Defendants and Brust with the Equal Employment Opportunity Commission ("EEOC"), which was assigned Charge No. 532-2025-02388 by the EEOC. Plaintiff's EEOC charge was simultaneously, dual and timely filed with the Ohio Civil Rights Commission.

14. On July 22, 2025, the EEOC issued Plaintiff a Notice of Right to Sue after determining that it would be unable to complete its investigation within one hundred days of the date the charges were filed.

15. This action is timely filed with this Court under Title VII of the 1964 Civil Rights Act, the Americans with Disabilities Act, and Ohio R.C. Chapter 4112.

16. This matter is properly venued in this Court and district under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1391(b)(1)-(2) because the unlawful employment practices occurred in this judicial district and Plaintiff lives and resides in this judicial district. Furthermore, Plaintiff was employed by Defendants in this judicial district.

17. Plaintiff seeks compensatory and punitive damages under 42 U.S.C. §§ 2000e *et seq.*, 42 U.S.C. §§ 1981a, 42 U.S.C. §§ 12101, *et seq.*, and R.C. Chapter 4112, in addition to equitable, injunctive, and declaratory relief.

18. Plaintiff seeks equitable, injunctive, and declaratory relief under 42 U.S.C. § 2000e,

4

*et seq.*, 42 U.S.C. § 1981a, 42 U.S.C. §§ 12101, *et seq.*, R.C. Chapter 4112, and 28 U.S.C. §§ 2201, *et seq.*

## BACKGROUND

19. Plaintiff restates and reavers the facts and allegations contained in paragraphs 1 through 18 of this, her Complaint.

20. For in excess of thirty-nine and one-half years, Plaintiff worked at the John Carroll University cafeteria located in University Heights, Cuyahoga County, Ohio, and her tasks and duties included, among others, cleaning and clearing tables frequented by the University's students teachers, and visitors, dishwashing, and serving food. At all times material herein, Plaintiff was an employee of Defendants.

21. At all times material herein, including at the time of Plaintiff's suspension from employment and Plaintiff's termination from employment, Defendants were "employers" within the meaning of 42 U.S.C. §§ 2000e, 42 U.S.C. §§ 12101 and Ohio Rev. Code §§ 4112. Defendants had and have in excess of one hundred full-time employees throughout Plaintiff's employment, and at the point in time Plaintiff was suspended and terminated from her employment.

22. Brust, at all times material herein, was an employee, agent, supervisor, and manager of Defendants.

23. The overwhelming majority of employees employed by Defendants at the John Carroll University cafeteria throughout Plaintiff's employment were non-Caucasian, non-white and non-disabled.

24. During Plaintiff's employment with Defendants, Plaintiff, in addition to compensation for hours worked, received among other benefits, free meals; discounts on the purchase of food and beverages; paid time off from work; purported management career

5

advancement opportunities; eligibility for participation in 401(k) benefit plans in which Plaintiff participated; disability benefits, and medical and prescription drug coverages, including vision and dental benefits.

25. At all times material herein, and throughout Plaintiff's employment with Defendants, Defendants encouraged, touted, and practiced "Diversity, Equity, and Inclusion". Furthermore, Defendants trained, encouraged, and ordered Brust to practice "Diversity, Equity, and Inclusion" with respect to Defendants' employees working at the John Carroll University cafeteria, including Plaintiff.

26. Defendants "Diversity, Equity, and Inclusion" policies, programs, and practices encouraged and advantaged the hiring, retention, and employment of persons and employees who were non-Caucasian, and non-white such as Plaintiff.

27. At all times material herein, and while Plaintiff was employed with Defendants, Defendants trained and educated its agents, supervisors, and managers on "Implicit Bias", including Brust.  The "Implicit Bias" training, in its content, structure, and implementation, taught and caused Defendants' agents, supervisors, and managers to in-fact practice discrimination in employment matters, including without limitation, discrimination on the basis of one's race and color, and was a mere proxy for making employment decisions based on non-objective criteria, such as Plaintiff's Caucasian race or white color.

28. Throughout her employment with Defendants, Plaintiff was *never* disciplined or otherwise counseled regarding her performance prior to September 19, 2024.  During Plaintiff's employment with Defendants, prior to September 19, 2024, Plaintiff abided by all of Defendants' policies and procedures, including without limitation Defendants' "Core Values" and other terms and conditions of employment announced and maintained by Defendants.

6

29. At all times material herein, Plaintiff was qualified for her position of employment with Defendants, with or without reasonable accommodations. Thus, Plaintiff was capable of performing all of her essential job functions, as set forth in her position description created by Defendants, including, among others, bussing tables and helping to maintain cleanliness; restocking items displayed and needed in the cafeteria; greeting and serving guests in a friendly and professional manner; adhering to uniform dress codes; adhering to Defendants' "Hospitality Gold Standards"; meeting all physical demands of her position of employment with Defendants; ensuring sufficient supplies of china, silverware, trays, cups, and glasses during service periods; emptying trash cans; wiping down dining room tables; adhering to "Clean As You Go" techniques; mopping and sweeping floors; assisting co-workers when needed; and performing other tasks and duties as assigned by Defendants.

30. During Plaintiff's employment with Defendants, Plaintiff received praise and accolades from students and visitors to the John Carroll University cafeteria. Thus, among other unsolicited comments, students and visitors wrote: "I love Diane so much"; "Diane is the best!"; "Diane is the best! My day gets better just seeing her!"; "Ms. Diane has always been so nice and welcoming! Going to the cafe is great because it's like coming home to family".; "Love Diane!"; "Diane is incredible"; "Someone please make a Diane fan page"; "One of my absolute favorite people". During Plaintiff's employment with Defendants, an on-line John Carroll University dining website tallied 202 "likes" directed towards Plaintiff, and displayed a picture of Plaintiff with her arm around one of her African-American co-workers, while both were smiling.

31. Before the false accusations made against Plaintiff by Defendants on September 19, 2024, Plaintiff had never used or uttered the word "nigger" while at work, or while away from work. Furthermore, throughout Plaintiff's employment with Defendants, no co-worker, before

7

September 19, 2024, had reported that Plaintiff had used or uttered the word "nigger" or any other racially discriminatory phrase or word.

32. Prior to September 19, 2024, Plaintiff's co-workers employed by Defendants at the John Carroll University cafeteria had openly used and uttered the word "nigger" and other racially-charged phrases and words, without any investigation or discipline.

33. Before September 19, 2024, African-American and non-white co-workers of Plaintiff employed by Defendants at the John Carroll University cafeteria called and referred to Plaintiff as a "retard" without suffering or experiencing any investigation or discipline from Defendants.  Prior to September 19, 2024, Plaintiff did not use or utter the word "nigger" while working or staffed at the John Carroll University cafeteria.

34. Prior to September 19, 2024, employees of Defendants at the John Carroll University cafeteria were afforded representation when summoned by Brust and other agents, supervisors, and managers for possible discipline or a disciplinary investigation.

35. Prior to September 19, 2024, no co-worker of Plaintiffs, or employee of Defendants, had accused Plaintiff of having uttered the word "nigger" or any other racially-charged phrase or word.

36. Continuing the practice of speaking with, and discussing with Ms. Debbie Cirillo about non-routine terms and conditions of Plaintiff's employment with Defendants, including, without limitation, matters subject to a human resources or potential disciplinary investigation, or matters that may result in discipline, up to and including termination, was not an undue hardship.

37. Before terminating Plaintiff on September 26, 2024, neither Brust, nor any other agent, supervisor, or manager of Defendants disclosed or informed Plaintiff of any of the reported investigatory facts or evidence allegedly gathered during such purported "investigation".

8

Furthermore, neither Brust, nor any other agent, supervisor or manager of Defendants informed any representative, including without limitation Ms. Debra Cirillo, of any facts or evidence gathered during such alleged "investigation" such that Plaintiff would be suspended or terminated from her employment with Defendants.

38. Following her termination from employment with Defendants, Plaintiff was replaced by a non-Caucasian, non-white, non-disabled employee of Defendants.

## COUNT I
### Violations of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*

39. Plaintiff restates and reavers the facts and allegations contained in paragraphs 1 through 38 of this, her Complaint.

40. 42 U.S.C. §§ 2000e, *et seq.* prohibits discrimination in employment based on an employee's race or color.

41. Defendants investigated, disciplined, suspended, and terminated Plaintiff's employment on the basis of her Caucasian race and white color.

42. Defendants targeted Plaintiff for disciplinary investigation based on Plaintiff's Caucasian race and white color.

43. Defendants conducted Plaintiff's "investigatory" interview in a discriminatory fashion, based on Plaintiff's Caucasian race and white color.

44. Defendants denied and failed to advise Plaintiff of her right to representation based on Plaintiff's Caucasian race and white color.

45. Defendants employees who were non-Caucasian, or non-white, were not targeted for "investigatory" interviews while Plaintiff was employed with Defendants.

46. Other non-white, and non-Caucasian employees of Defendants at the John Carroll University cafeteria were informed of, and provided rights to representation during a disciplinary,

9

or investigatory interview.

47. Employees of Defendants at the John Carroll University cafeteria, preceding Plaintiff's September 2024 suspension and termination from employment, openly used and uttered racially-charged words and phrases, including without limitation the word "nigger" without any investigation, repercussions, or discipline.

48. Defendants' agent, supervisor and manager, Brust, neither investigated, nor disciplined non-Caucasian, non-white employees of Defendants working at the John Carroll University cafeteria for using racially-charged words or phrases, including without limitation the word "nigger". Following Plaintiff's pretextual discharge from employment, Defendants hired and replaced Plaintiff with a non-Caucasian, non-white employee at the John Carroll University cafeteria.

49. Defendants "investigated", suspended, and discharged Plaintiff because of her Caucasian race, and white color.

50. Defendants acted with malice and/or reckless indifference to Plaintiff's rights.

51. Brust, at all times material herein, including without limitation when "investigating", suspending, and discharging Plaintiff, acted in the course and scope of his employment with Defendants, and was authorized by Defendants to take such actions.

## COUNT II
**Violations of the Americans with Disabilities Act--42 U.S.C. §§ 12101, *et seq.***

52. Plaintiff restates and reavers the facts and statements contained in paragraphs 1 through 51 of this, her Complaint.

53. Plaintiff is developmentally disabled and cognitively impaired. Despite being 60 years of age, Plaintiff has the cognition of a 10-year-old, and can read and perform math skills at a 6th grade level. Plaintiff is severely limited in her ability to comprehend and communicate

effectively. At all times material herein, and throughout her employment with Defendants, Plaintiff was developmentally disabled and cognitively impaired.

54. Defendants' agents, supervisors and managers, including Brust, knew both that Plaintiff was developmentally disabled and cognitively impaired, and that Plaintiff was disabled.

55. Defendants, including Brust, targeted Plaintiff for an "investigatory" interview because Plaintiff was disabled and impaired.

56. Defendants, including Brust, conducted an "investigation" of Plaintiff because Plaintiff was disabled and impaired.

57. Defendants, including Brust, suspended Plaintiff from her employment with Defendants because Plaintiff was disabled and impaired.

58. Defendants, including Brust, terminated Plaintiff's employment with Defendants because Plaintiff was disabled and impaired.

59. Non-disabled and non-impaired employees of Defendants who worked at the John Carroll University cafeteria openly used and uttered racially-charged and disability-charged words and phrases, including without limitation "nigger" and "retard", without investigation, suspension, or discipline by Defendants.

60. Employees of Defendants working at the John Carroll University cafeteria were informed of, and provided notice of their right to representation at investigatory interviews that could lead to discipline.

61. Employees of Defendants working at the John Carroll University cafeteria were afforded and received proper, thorough and neutral investigations prior to receiving discipline from Defendants.

62. Defendants, including Brust, did not contact, or attempt to contact Ms. Debra

11

Cirillo prior to conducting an "investigatory" interview of Plaintiff and inexplicably abandoned an accommodation practice that had been afforded to Plaintiff during her employment with Defendants..

63. Other non-disabled, non-impaired employees of Defendants working at the John Carroll University cafeteria were afforded proper, thorough, and neutral investigations of disciplinary matters, including matters that could lead to discipline, suspension or discharge.

64. Non-disabled, non-impaired employees of Defendants working at the John Carroll University cafeteria were apprised of the facts and evidence against them prior to inflicting discipline, suspension, or discharge.

65. Accommodating Plaintiff by attempting to contact, or speaking with Ms. Debra Cirillo or other non-disabled, non-impaired representatives of Plaintiff prior to the non-routine events of Plaintiff's "investigatory" interview; suspension; and discharge was an accommodation that did not impose an undue burden or hardship to Defendants.

66. Defendants, including Brust, discriminated against Plaintiff on the basis of her developmental disability and cognitive impairment, and disability in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*.

67. Defendants acted with malice and/or reckless indifference to Plaintiff's rights.

## COUNT III
### Violations of Ohio Rev. Code 4112 Race and Color Discrimination

68. Plaintiff restates and reavers the facts and statements contained in paragraphs 1 through 67 of this, her Complaint.

69. Ohio Rev. Code §§ 4112 prohibits discrimination in employment based on an employee's race or color.

70. Defendants investigated, disciplined, suspended, and terminated Plaintiff's

12

employment on the basis of her Caucasian race and white color.

71. Defendants targeted Plaintiff for disciplinary investigation based on Plaintiff's Caucasian race and white color.

72. Defendants conducted Plaintiff's "investigatory" interview in a discriminatory fashion, based on Plaintiff's Caucasian race and white color.

73. Defendants denied and failed to advise Plaintiff of her right to representation based on Plaintiff's Caucasian race and white color.

74. Defendants' employees who were non-Caucasian, non-white, were not targeted for "investigatory" interviews while Plaintiff was employed with Defendants.

75. Other non-white, and non-Caucasian employees of Defendants at the John Carroll University cafeteria were informed of, and provided rights to representation during a disciplinary, or investigatory interview.

76. Employees of Defendants at the John Carroll University cafeteria, preceding Plaintiff's September 2024 suspension and termination from employment, openly used and uttered racially-charged words and phrases, including without limitation the word "nigger" without any investigation, repercussions, or discipline.

77. Defendants' agent, supervisor and manager, Brust, neither investigated, nor disciplined non-Caucasian, non-white employees of Defendants at the John Carroll University cafeteria for using racially-charged words or phrases, including without limitation the word "nigger".  Following Plaintiff's pretextual discharge from employment, Defendants hired and replaced Plaintiff with a non-Caucasian, non-white employee at the John Carroll University cafeteria.

78. Defendants "investigated", suspended, and discharged Plaintiff because of her

13

Caucasian race, and white color in violation of R.C. Chapter 4112.

79. Defendants acted with malice and/or reckless indifference to Plaintiff's rights.

80. Brust, at all times material herein, including without limitation when "investigating", suspending, and discharging Plaintiff, acted in the course and scope of his employment with Defendants, and was authorized by Defendants to take such actions.

**COUNT IV**
**Violations of Ohio Rev. Code 4112 Disabilities Discrimination**

81. Plaintiff restates and reavers the facts and allegations contained in paragraphs 1 through 80 of this, her Complaint.

82. Plaintiff is developmentally disabled and cognitively impaired. At all times material herein, and throughout her employment with Defendants, Plaintiff was developmentally disabled and cognitively impaired.

83. Defendants' agents, supervisors, and managers, including Brust, knew both that Plaintiff was developmentally disabled and cognitively impaired, and that Plaintiff was disabled.

84. Defendants, including Brust, targeted Plaintiff for an investigatory interview because Plaintiff was disabled and impaired.

85. Defendants, including Brust, conducted an "investigation" of Plaintiff because Plaintiff was disabled and impaired.

86. Defendants, including Brust, suspended Plaintiff from her employment with Defendants because Plaintiff was disabled and impaired.

87. Defendants, including Brust, terminated Plaintiff's employment with Defendants because Plaintiff was disabled and impaired.

88. Non-disabled, non-impaired employees of Defendants who worked at the John Carroll University cafeteria openly used and uttered racially-charged and disability-charged words

14

and phrases, including without limitation "nigger" and "retard", without investigation, suspension, or discipline by Defendants.

89. Employees of Defendants working at the John Carroll University cafeteria were informed of, and provided notice of their right to representation at investigatory interviews that could lead to discipline.

90. Employees of Defendants working at the John Carroll University cafeteria were afforded and received proper, thorough and neutral investigations prior to receiving discipline from Defendants.

91. Defendants, including Brust, did not contact, or attempt to contact Ms. Debra Cirillo prior to conducting an "investigatory" interview of Plaintiff, and inexplicably abandoned an accommodation practice that had been afforded to Plaintiff during her employment with Defendants.

92. Other non-disabled, non-impaired employees of Defendants at the John Carroll University cafeteria were afforded neutral and thorough investigation of disciplinary matters, including matters that could lead to suspension or discharge.

93. Non-disabled, non-impaired employees of Defendants working at the John Carroll University cafeteria were apprised of the facts and evidence against them prior to inflicting discipline, suspension, or discharge.

94. Accommodating Plaintiff by attempting to contact, or speaking with Ms. Debra Cirillo or other non-disabled, non-impaired representatives of Plaintiff prior to the non-routine events of Plaintiff's investigatory interview; suspension; and discharge was an accommodation that did not impose an undue burden or hardship to Defendants.

95. Defendants, including Brust, discriminated against Plaintiff on the basis of her

developmental disability and cognitive impairment, and disability in violation of R.C. Chapter 4112.

96. Defendants acted with malice and/or reckless indifference to Plaintiff's rights.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Diane Seifert respectfully requests that this Court enter judgment in her favor and against Defendants Eat 'N Park and Parkhurst, and provide the following relief:

A. A declaratory judgment that Defendants violated Title VII of the Civil Rights Act of 1964 with respect to Plaintiff.

B. A judgment enjoining Defendants from violating Title VII of the Civil Rights Act of 1964.

C. A declaratory judgment that Defendants violated the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* with respect to Plaintiff.

D. A judgment enjoining Defendants from violating the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

E. A declaratory judgment that Defendants violated Ohio Rev. Code Chapter 4112 with respect to Plaintiff.

F. A judgment enjoining Defendants from violating Ohio Rev. Code Chapter 4112 with respect to Plaintiff.

G. An order for such relief, including back pay and front pay, and benefits that will make Plaintiff whole for Defendants conduct; compensatory damages; emotional distress damages; punitive damages; pre-judgment and post-judgment interest.

H. Reasonable costs and expenses of this action, including attorneys' fees, under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, and Ohio Rev. Code Chapter 4112.

I. Such further and other relief as the Court deems appropriate, just, and equitable.

DATED this 15th day of October, 2025.

Respectfully submitted,

*/s/ Keith L. Pryatel*
Keith L. Pryatel (Ohio Bar No. 0034532)
kpryatel@hplaborlaw.com
HANELINE PRYATEL LAW
561 Boston Mills Road, Suite 700
Hudson, OH 44236
Phone: 234.284.2820
Fax: 234.284.2819
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

The foregoing was served on the following via overnight and regular U.S. mail:

Eat 'N Park Hospitality Group, Inc.
c/o Corporate Services Company
1160 Dublin Road, Suite 400
Columbus, Ohio 43215

Parkhurst Dining, LLC
285 East Waterfront Drive
Homestead, Pennsylvania 15120

Parkhurst Dining, LLC
c/o Corporate Services Company
1160 Dublin Road, Suite 400
Columbus, Ohio 43215

Eat 'N Park Hospitality Group, Inc.
c/o Corporate Services Company
251 Little Falls Drive
Wilmington, DE 19808

  /s/Keith L. Pryatel
Keith L. Pryatel